IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| UNILOC 2017 LLC, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AT&T MOBILITY LLC, AT&T SERVICES, INC., | § | CIVIL ACTION NO. 2:18-CV-00514-JRG |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Ericsson, Inc.'s ("Ericsson") Motion to Intervene as a Defendant (the "Motion"). (Dkt. No. 20.) Having considered the Motion, briefing, and relevant authorities, the Court is of the opinion that the Motion should be and hereby is **GRANTED** for the reasons set forth herein.

I.  BACKGROUND

On November 17, 2018, Plaintiff Uniloc 2017 LLC ("Uniloc") sued Defendants AT&T Mobility LLC and AT&T Services, Inc. (collectively "AT&T") for patent infringement. (Dkt. No. 1.) Verizon filed its Answer on January 18, 2019, (Dkt. No. 10), and the Court held a scheduling conference on March 18, 2019. (Dkt. No. 15.)

According to the complaint, Uniloc accuses AT&T's "network, base stations, and network controllers (collectively, the 'Accused Infringing Devices') that provide shared network access to LTE-LAA and Wi-Fi capable devices over at least one common frequency band" of infringing at least one claim of U.S. Patent No. 7,017,676 (the "'676 patent"). (Dkt. No. 1 ¶ 58.) Ericsson filed

1

a motion to intervene as a defendant on March 8, 2019, on the basis that it "sells base stations to AT&T that implement the accused LTE-LAA feature." (Dkt. No. 17 at 1.) Ericsson moves to intervene as a matter of right, Fed. R. Civ. P. 24(a), or alternatively, requests permission to intervene pursuant to the Court's discretion, Fed. R. Civ. P. 24(b). AT&T does not oppose intervention, but Uniloc does. (Dkt. No. 20 at 3; Dkt. No. 24.)

## II. LEGAL STANDARD

### A. Mandatory Intervention

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, a prospective intervenor is entitled to intervention if each of the following elements is satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2017) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. Of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007). However, "[t]he rule 'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Lit.*, 570 F.3d 244, 248 (5th Cir. 2009)). Intervention in patent cases is

reviewed under regional circuit law.  As such, Fifth Circuit law controls.  *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010) ("We review the district court's denial of intervention under Rule 24 under regional circuit law. . . ").

### B. Permissive Intervention

Even if intervention is not mandated as a matter of right, a court may nonetheless permit intervention if the party "[o]n timely motion . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  A court has full discretion to deny permissive intervention even where there is a common question of law or fact.  *New Orleans Pub. Serv., Inc.*, 732 F.3d at 471.

## III. DISCUSSION

### A. Mandatory Intervention

Ericsson argues that it meets each of the four requirements to intervene as a matter of right. (Dkt. No. 17 at 5–11.)  The Court addresses each requirement in turn.

#### i. Timeliness

A party may intervene as a matter of right if the motion is timely.  Fed. R. Civ. P. 24(a). When evaluating timeliness, courts consider four factors: (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;" (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for

leave to intervene is denied;" and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (citing *Stallworth v. Monsanto, Co.*, 558 F.2d 257, 264 (5th Cir. 1977)). "[T]hese factors merely comprise a framework for the analysis of this threshold inquiry." *Id.* Timeliness is assessed from the totality of the circumstances, in which no one factor is dispositive or exhaustive. *Id.*

Ericsson argues that its Motion is timely because (1) it seeks intervention in the early stages of the case: after AT&T answered Uniloc's complaint and before the scheduling conference or start of discovery; (2) intervention will streamline discovery because Ericsson designs and sells the accused products to AT&T; (3) denying intervention will prejudice Ericsson, as it possesses the most knowledge to defend its products against Uniloc's infringement claims; and (4) there are no unusual circumstances militating against such a finding. (Dkt. No. 20 5–7.)

Given that Ericsson filed its Motion before the start of discovery, intervention would not materially prejudice any of the existing parties. *See Edwards*, 78 F.3d at 1001 ("[M]ost of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation."); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-cv-00235-JRG, 2017 WL 6059303, at *4 (E.D. Tex. Dec. 7, 2017) (finding motion filed after the scheduling conference, but before claim construction and trial as timely because intervenors moved as soon as possible after learning of their interest in the case). Moreover, Uniloc does not dispute that Ericsson's Motion is timely, (Dkt. No. 24 at 7), and the Court is not aware of any unusual circumstances that would suggest otherwise. Accordingly, the Court finds that the timeliness requirements of Rule 24 have been met.

### ii. Interest in the Case

Mandatory intervention also requires the intervenor to have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The interest must be "direct, substantial, [and] legally protectable," *Texas*, 805 F.3d at 657, and "go[] beyond a generalized preference that the case come out a certain way." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994).

Ericsson argues that it has a significant interest in this lawsuit because it is "the designer and manufacturer of the Accused Ericsson Base Stations" and Uniloc's allegations against its products "could negatively affect future sales." (Dkt. No. 20 at 7.) In addition, Uniloc has brought a similar lawsuit against Verizon, alleging that Ericsson's base stations infringe the same patent. *See Uniloc 2017 LLC v. Verizon Commc'ns Inc., et al.*, No. 2:18-cv-00513-JRG (E.D. Tex. Nov. 29, 2018). Ericsson has sought intervention in both cases to reduce the likelihood of inconsistent judgments against its products. (Dkt. No. 28 at 4.) While Uniloc has not provided its infringement contentions to Ericsson, Ericsson claims that it has no reason to believe that the two suits would accuse different products and Uniloc has not admitted as much. (*Id.*) Finally, Ericsson is obligated to indemnify AT&T for any damages resulting from a finding that Ericsson's base stations infringe the '676 patent. (*Id.* at 3; Dkt. No. 28–2.)

Uniloc argues that Ericsson is not entitled to intervention because it only provides *some* of the base stations in Verizon's network and those stations comprise only part of the network accused of infringement. (Dkt. No. 24 at 3–4.) Uniloc also points out that Ericsson represents that it "*likely* possesses documents related to the design and function of the Accused Ericsson Base Stations," which contradicts Ericsson's assertion that it has an interest as the manufacturer of the accused base stations. (*Id.* at 5 (emphasis in original); *see also* Dkt. No. 33 at 1.)

The Court finds that Ericsson's interests are substantial and go beyond a generalized preference for a particular case outcome. Ericsson's base stations that implement the accused LTE-LAA feature will be central to the litigation. *See, e.g.*, *Team Worldwide*, 2017WL 6059303, at *4 (finding that manufacturers of accused product have a substantial interest in patent case against their customers); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448, 2010 WL 11488729, at *1 (E.D. Tex. May 10, 2010) (finding Intel had interest in litigation in part because it was "the manufacturer of a networking component implicated in USEI's infringement allegations"); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1337, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting intervenor motion because "it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product."). The complaint is replete with references to LAA-LTE base stations that allegedly infringe the '676 patent, (Dkt. No. 1 ¶¶ 58–64), and Uniloc concedes that Ericsson supplies some of those accused base stations, (Dkt. No. 24 at 6 ("Rather, Ericsson provides the base stations in AT&T's infringing network.").).

Uniloc argues that intervention is inappropriate because Ericsson's base stations account for only a part of the allegedly infringing network. However, Rule 24 requires that an intervenor have "*an* interest" in the property or transaction that is the subject of the action. The fact that Ericsson does not supply *all* of the accused products does not mean it fails to have an interest within the context of Rule 24. Uniloc's infringement allegations put Ericsson's customer base and reputation at risk—a risk that is only magnified by its indemnity obligation to AT&T. *Acer*, 2010 WL 11488729, at *2 ("Courts have held that beyond the injury that might arise from having to indemnify customers, a manufacturer such as Intel faces the loss of its customer base and reputation as a result of patent infringement allegations."); *see also id.* (finding that "customer relationships with Defendants in this action suggest that Intel has a financial interest in the outcome

6

of this litigation and that interest is borne out by agreements to indemnify losses sustained by its customers"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, No. 04-007, 2004 WL 2035005, at *2 (E.D. La. Sept. 10, 2004) (finding interest requirement met where named defendant "will seek indemnification against [the intervenor]" and "interest in having its obligations under the [indemnification agreement were established]"). Accordingly, the Court finds that Ericsson has a direct interest in this lawsuit in satisfaction of Rule 24(a)(2).

### iii. The Impairment Requirement

Intervention as of right will not be granted unless "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Ericsson argues that "[w]ithout intervention, Ericsson cannot safeguard prospective sales of the Accused Ericsson Base Stations or avoid the possibility of future, inconsistent judgments." (Dkt. No. 20 at 8–9.) In particular, intervention would allow Ericsson to "definitively litigate the allegations against [its products]" and assert collateral estoppel in other cases that represent essentially the same dispute. (*Id.* at 9–10.) Uniloc does not specifically address this element, but instead argues that Ericsson makes only "attorney argument[s]" that are "not rooted in any declaration or other evidence [showing] that [it] has something beyond a preference [for a finding of non-infringement]." (Dkt. No. 24 at 5.)

Having considered the totality of the circumstances, the Court finds that disposition of this action may, as a practical matter, impair or impede Ericsson's ability to protect its interests. As the manufacturer of some of the accused products, an adverse ruling could certainly "impact[] [its] relationships with other retail customers" and trigger any indemnity obligations similar to the obligation that it owes to AT&T. *Team Worldwide*, 2017 WL 6059303, at *5; *see also Indus. Tech. Research Inst. v. LG Elecs., Inc.*, No. 3:13-cv2016, 2014 WL 5325709, at *11 (S.D. Cal.

7

Oct. 17, 2014) ("As there is no dispute that LG Display may be unable to sell liquid crystal displays to U.S. customers if Plaintiff were to succeed in this litigation, the Court finds that disposition of this action may adversely impair LG Display's significantly protectable interest.").

### iv. Inadequacy of Representation

Finally, to be entitled to mandatory intervention, a prospective intervenor must show that the existing parties cannot adequately represent its interests. Fed. R. Civ. P. 24(a)(2); *Texas*, 805 F.3d at 661. This burden is "minimal" and "is satisfied if the applicant shows that the representation of his interest '*may* be' inadequate." *Texas*, 805 F.3d at 661 (internal citation omitted and emphasis added). "However, the burden 'cannot be treated as so minimal as to write the requirement completely out of the rule.'" *Entergy Gulf States Louisiana*, 817 F.3d at 203 (quoting *Haspel*, 493 F.3d at 578). A party "must produce something more than speculation as to the purported inadequacy." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (quoting *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)).

If the intervenor and an existing party share the same ultimate objective, a presumption arises that the intervenor's interests are adequately represented. *Id.* The intervenor can rebut this presumption by showing, for example, an "adversity of interest, collusion, or nonfeasance." *Id.*; *see also Texas*, 805 F.3d at 662 n.5 (noting that while "we often have implied that 'adversity of interest, collusion, or nonfeasance' are the only three ways to demonstrate inadequacy of representation," that list was not intended to be exhaustive). "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas,* 805 F.3d 653, 662 (5th Cir.2015). These adverse interests "must be shown in the *present* proceeding and may not be inferred from the possibility

8

of adversity in some future proceeding." *Bush v. Viterna*, 740 F.2d 350, 356–57 (5th Cir. 1984) (finding no inadequate representation because the "Association makes no showing of adversity of interest in *this* proceeding," but instead "asserts that, because the counties and the Commission may end up on opposite sides of the table in some future litigation, we should find adversity of interest") (emphasis in original).

Ericsson argues that Verizon cannot adequately represent its interests because (1) "Ericsson and its employees—not AT&T—possess the most substantial knowledge regarding the Accused Ericsson Base Stations' design and function," and (2) since "other suppliers may have also sold Accused Base Stations to Verizon," "AT&T's defense . . . may be inadequate to protect Ericsson's interests to the extent [] AT&T takes defensive positions with regard to other suppliers' base stations that differ from or harm defensive positions regarding Ericsson's base stations." (Dkt. No. 20 at 10–11.)

Uniloc disagrees and argues that AT&T can adequately defend its own network and any purported interests that Ericsson may have. (Dkt. No. 24 at 6.) Both Verizon and Ericsson raise the same positions and defenses in their respective answers, (*id.* at 8), and based on evidence in the complaint, "AT&T is well versed in the functioning of all the relevant infringing equipment." (*Id.* at 2 (citing press release from AT&T's website).) According to Uniloc, Ericsson only offers speculation and attorney argument that Verizon's interests may diverge from its own, which is insufficient to show inadequate representation. (*Id.* at 5–6.)

Understanding that Ericsson's burden is "minimal" and given the liberal application of Rule 24, the Court is not persuaded that AT&T is in the best position to defend Ericsson's interests in this case. Although Ericsson and AT&T may have the same ultimate objective—avoiding or minimizing liability, there is a real possibility that those interests may diverge to the extent

9

AT&T's positions and defenses align with the suppliers of other base stations that are also accused of infringing Uniloc's patent. *See, e.g.*, *Team Worldwide*, 2017 6059303, at *6 (finding inadequate representation because "[e]ach proposed intervenor provides a product sold by Walmart that directly competes with other products, sold by Walmart, including those of the other proposed intervenors" and thus "Walmart's interests . . . may diverge from that of each individual proposed intervenor's interest"). More importantly, while AT&T may have some knowledge relevant to Ericsson's base stations, the Court agrees that Ericsson likely possesses "superior knowledge of how the accused [base stations] are configured and operate" and is thus better situated to understand and defend its own products. *Intellectual Ventures I v. LLC v. AT&T Mobility, LLC*, No. 12-cv-193, 2014 WL 4445953, at*2 (D. Del. Sept. 8, 2014) ("[W]hile Defendants maintain similar interests as Intervenors, they are not as well-situated to understand and defend Intervenor's products."); *see also Bush*, 740 F.2d at 357 (noting that courts have found inadequate representation "in which it is clear that the applicant will make a more vigorous presentation of arguments than existing parties"). No more is required to meet this element of Rule 24(a)(2). *See Texas*, 805 F.3d 661(holding that intervenor "need not show that representation by existing parties will be, for certain, inadequate," but only that "his interest 'may be' inadequate") (internal citations omitted).

Since Ericsson has met each of the requirements of Rule 24(a)(2), the Court finds that it should be allowed to intervene.

### B. Permissive Intervention

Ericsson also moved seeking permissive intervention. For completeness and out of an abundance of caution, the Court addresses whether it should permit intervention as a matter of discretion. Rule 24(b) provides that a court may permit intervention if (1) the intervenor has a

claim or defense that shares a common question of law or fact with the main action, and (2) granting intervention will not unduly delay or prejudice the existing parties to the suit. Fed. R. Civ. P. 24(b).

The Court finds that both elements for permissive intervention have been met. Uniloc alleges that AT&T's use of Ericsson's base stations that implement the LAA-LTE feature infringe certain claims of the '676 patent. Both AT&T and Ericsson have raised defenses of non-infringement, invalidity, and others in their respective answers, and "[w]ithin these defenses there are numerous common questions of law and fact, such as: (1) whether the claims asserted in the ['676 patent] are valid and enforceable; and (2) whether [Ericsson's] . . . products and [AT&T's] [use] of said products, infringe the ['676 patent]." *Team Worldwide*, 2017 WL 6059303, at *7; *Acer*, 2010 WL 11488729, at *2 (permitting manufacturer of accused products to intervene because "it appears that [Intel's product] is central to Dell and Intel's claims for non-infringement, and Intel products are also likely to be implicated in USEI's infringement case against Dell and other Intel customers"). Permitting intervention would also not be unduly prejudicial. As noted above, Ericsson moved for intervention in the early stages of this case, and with fact discovery not closing until March 18, 2020, the parties will have ample time to pursue discovery and prepare for both claim construction and trial. (Dkt. No. 34.) Ericsson has also represented that it would not seek transfer if permitted to intervene and so its intervention would not otherwise disrupt the flow of this litigation. *See Team Worldwide*, 2017 WL 6059303, at *7 (granting permissive intervention where "the proposed intervenors'' disclosed plans to sever, fragment, stay, or transfer this case" were only speculative).

Accordingly, in exercising its discretion, the Court finds that Ericsson should also be allowed to intervene pursuant to Rule 24(b).

## IV.     CONCLUSION

For the reasons set forth above, the Court finds that Ericsson should be permitted to intervene in this case both under Rule 24(a) and pursuant to the Court's discretion under Rule 24(b). The Court hereby **GRANTS** Ericsson's Motion to Intervene as a Defendant, (Dkt. No. 20). Ericsson is **ORDERED** to file its Answer in Intervention within fourteen (14) days of the issuance of this Order.

**So ORDERED and SIGNED this 23rd day of April, 2019.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE